STATE ex DUFFY v MEYER et

Ohio Appeals, 2nd Dist, Franklin Co.

No. 3099. Decided March 23, 1940

Thomas J. Herbert, Attorney General, Columbus; R. D. Colmery, Asst. Atty. Gen., Columbus, for plaintiff-appellee.

T. J. Duffy, Columbus, for defendant-appellant.

## OPINION

BY THE COURT:

This case is before this Court upon appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, sustaining a verdict of the jury in favor of State, ex rel, on behalf of Marie S. Creager v Leo J. Meyer, et, doing business as Meyer Brothers, as noncomplying employers.

The petition by the Attorney General recites that he brings the action upon the request of the Industrial Commission on behalf of Marie S. Creager by virtue of §1465-74. It is alleged that on the 18th day of February, 1938, the Commission made a finding against the defendants in favor of Marie S. Creager, which finding was certified by the Commission to the Attorney General; that there is due the plaintiff on account of the finding the sum of $4360.00; that the same has been demanded and remains unpaid. Plaintiff prays judgment against the defendant.

An answer is filed in which it is alleged that the Commission was without authority to make an award of compensation for the reason that the de-

cedent was not an employee of the defendants; that the accident did not occur in the course of or arise out of the employment and that the defendants are not amenable to the compensation law for the reason that they did not regularly employ three or more employees. This answer was denied generally.

The cause came on for hearing before a jury, and a verdict rendered in favor of the plaintiff, on which the Court rendered judgment against the defendants in the sum of $4360.00. A motion for new trial was made on the usual grounds and was overruled.

The facts disclosed by the Bill of Exceptions are essentially that Leo J. Meyer and Charles Meyer, doing business as Meyer Brothers, in December, 1936, operated a garage in the village of Rome, Franklin County, where automobiles were serviced and repaired. They had begun negotiations to be appointed as the sales agents of the Dodge and Plymouth automobiles, which negotiations ultimately resulted in their appointment as such agents. Dewey U. Creager, the decedent. entered their employ as a bookkeeper in 1922, when defendants' place of business was at Rome and continued in the service as a full time employee until about 1929, when the business of the defendants being curtailed, he was put on half time with reduced pay, and thereafter devoted his mornings to the work of Meyer Brothers, seeking and obtaining employment as bookkeeper for a number of other concerns, for whom he worked during the afternoons. In 1936 the garage of the Meyer Brothers was destroyed by fire and a new garage built, which was put in use in July, 1936. After the fire the books and records were kept at the home of Mr. Creager in the city of Columbus and until the time of the accident no office facilities were provided at the garage in Rome. After the fire Creager kept the books in a room at his home to which he referred as his office. In addition to keeping the books, he took care of collections and performed other services.

Evidence was introduced that he had charge of certain moneys belonging to the firm, which had no checking account. Creager deposited or cashed at the bank where he did business. certain checks of the Meyer Brothers and produced the cash. A post office box was obtained in Columbus. by Meyer Brothers where Mr. Creager obtained their mail. Mr. Creager used his own automobile in going back and forth between Rome and his home and also used the same in any traveling incident to the other duties. Meyer Brothers furnished the tires, gas and oil for the automobile.

In going to and from the garage Creager habitually used West Broad Street, or Route 40, to Rome where he turned north across the interurban track going into the garage, the entrance of which was about 50 feet north of the track.

Evidence is introduced to the effect that on Saturday, December 5th, 1936, Creager had been at the garage in the morning and left there about eleven o'clock, coming to his home and office, after which he had lunch, returned to his office and about 1:30 left for the garage and while driving across the interurban track at Rome in the direction of the garage his automobile was struck by a fast moving interurban car and he was instantly killed. After the accident two checks belonging to Meyer Brothers and $5.00 in cash were found upon his person, all of which were admitted to be the property of Meyer Brothers and turned over to them by the widow. The $5.00 was a part of a greater sum belonging to the defendants which he should have had at the time of the accident, but which was not discovered.

Meyer Brothers had cancelled their coverage with the Industrial Commission several years prior to the accident. At the time of the accident Meyer Brothers had not complied with the requirements of the Workmen's Compensation Law and the Commission ordered them to pay to Mrs. Creager the amount of the award made by the Commission and for failing to pay, the

action was brought in accordance with §1465-74. Meyer Brothers had only two regular employees not counting the decedent.

The evidence tends to show that on the afternoon of the accident Meyer Brothers were to have had a conference with the representatives of a motor company. One of the defendants testified that it was not necesary for Creager to be present at this conference, but that Creager had said he would like to hear the nature of their conversation. Myer also testified that Creager had no duties to perform at the garage that afternoon, and that he had not been out on any errand for Meyer Brothers just prior to the accident. Evidence was introduced by Mrs. Creager that the decedent had told her about 1:30 that he had to go back to Rome, which testimony was ruled out by the Court of Common Pleas. Evidence tended to show that Meyer Brothers had cancelled their payments to the fund on the advice of Creager, who had stated that he, Creager, could not come under the compensation act and without him the partnership had only two employees. Creager on behalf of Meyer Brothers, wrote the cancelling letter to the Commission. Meyer testified that Creager was at the garage Saturday morning bringing $60.00, in compliance with Meyer's request that he bring out $40.00, but some collections having come in he did not need the $40.00 and he took only $20.00 from Creager and Creager was not bringing out any money for the pay roll in the afternoon.

It is urged on behalf of the defendant that Creager was not in the course of employment at the time of the accident even though he were an employee. At the time of his death he had not reached the premises of Meyer Brothers. It is insisted that if he had had work to do at the garage that afternoon he would not have been in the the course of employment until he reached the garage.

It is further urged that he was not an employee, but an independent contractor, keeping books for other concerns besides the Meyers, doing all the work at his home, thereby conducting an independent business.

On the part of the appellee it is urged that the evidence establishes that at the time Creager was killed he was taking money to the garage to help with the pay roll. Shortly after his death Meyer gave to Mrs. Creager a receipt for $5.00 "which he was returning to help with the pay roll."

It will be observed that there is a conflict of testimony on the question as to whether Creager brought the pay roll money or any part of it in the morning or in the afternoon. It seems quite evident that he was there in the morning, and the testimony of Meyer is reasonably to the effect that after the morning visit Creager returned to his home and that he had no further business there with the exception of listening in on the conference between the Meyer Brothers and the agent of the Dodge and Plymouth Companies.

Meyer testified that had Creager not been killed and the agency had been established he would have kept the records.

Numerous cases are cited by both plaintiff and defendant, all of which the Court has read. It must be admitted that the case is at least in the twilight zone and that nice distinctions may be required. If Creager was an independent contractor by virtue of the fact that he was engaged only in the morning as a bookkeeper for the Meyer Brothers at a compensation, but that he was free to perform his services as he saw fit without control of. Meyer Brothers, he would not be entitled to compensation. And it likewise must be admitted that even though he were an employee he would not be entitled to compensation unless the accident occurred as a result of and arising out of his employment. Sec. 1465-68 GC, provides that in order to be compensated the accident must occur in the course of employment wheresoever the injury has occurred. If Creager was killed while going from his home to his place of business while he was not then in pursuit of his master's busi-

ness, he would not be entitled to recover.

The provisions of the Act "do not cover any injury which has its cause outside of and disconnected with the employment although the employee may at the time have been engaged in the work of his employer in the usual way." **Fassig v State, 95 Oh St 232.**

**Commission v Weigandt, 102 Oh St 1** holds in substance that the test of the right to award from the Fund for injury in the course of employment. is not whether there was any fault on the part of the employer but whether the employment had a causal connection with the injury either through its activities, its conditions or its environment, and that the law does not cover an injury which had its cause outside of and disconnected with the business in which the injured workman was employed.

**Conrad v Coal Co., 107 Oh St 368,** holds in substance that the compensation Act does not apply to employees who may be injured after the termination of their daily employment, nor when at the time of the injury the relationship of employer and employee had ceased to subsist.

**Industrial Commission v Heil, 123 Oh St 604,** involved an accident which arose by the workman being struck after having alighted from a taxicab in which he rode from Springfield to a point near the place of his employment. While he was walking from the place where he alighted from the taxicab, he was struck and injured by a passing automobile. His claim was rejected on the ground that his injuries were not received in the course of his employment. The Court states that the whole case depends upon the question as to whether he was injured at the time he was acting within the scope of his employment. The Court states that it is quite unable to see any substantial merit in the proposition that an employee whose duties had. a fixed situs can be in the. discharge of those duties when traveling upon a public highway

for the purpose of reaching the place of employment. The Court cites in support of its holding that he is not entitled to compensation. the cases to which we have just referred.

See **Industrial Commission of Ohio v. Barber, 117 Oh St 373.**

**Industrial Commission v Lewis, 125 Oh St 296,** holds in substance that the validity of the act has been sustained because it contemplates an award only for injuries occasioned to an employee while in course of his employment, and only for an injury sustained in the performance of some act or at the discharge of some duty in the service of his employer.

The case of **Inglish v Commission, 125 Oh St 494,** holds that where a school teacher, after school hours, while traveling by the usual and necessary route from his school to his home, carrying examination papers which he was required to grade at his home, there being no opportunity or facilities to perform the work at the schoolhouse, was struck and killed by an automobile, such accident arose out of and in the course of his employment. This case, however, was directly overruled in the case of **Commission v Gintert, 128 Oh St 129.**

The **Industrial Commission of Ohio v Baker, 127 Oh St 345,** holds that the right to an award is dependent upon a causal connection of the injury and the employment of the applicant, either through the activities, the condition or the environment of such employment. The Constitution and statute providing for compensation contemplates only such hazards to be encountered by the employee in the discharge of his employment and do not embrace risks and hazards such as those in traveling to and from his place of actual employment over streets and highways which are similarly encountered by the public generally.

Matthias, J., delivering the opinion of the Court, said:

"The benefits of the funds are only for injuries occasioned in the course of the workman's employment and compensation is not authorized for any in-

jury which had its cause outside of and disconnected with the work in which the workman was employed."

The Judge cites with approval **Fassig v State, 95 Oh St 232; Commission v Weigandt, 102 Oh St p. 1; Commission v Barber, 117 Oh St 363; Commission v Heil, 123 Oh St 160.**

**Industrial Commission of Ohio v Bateman, 126 Oh St 279,** holds that in order to avail himself of the provisions of the compensation law, the injuries must have been occasioned in the course of his employment and connected with the operation of the employer's business, either on the premises or within its immediate environs, or if sustained elsewhere the employee acting within the scope of his employment must at the time of his injury have been engaged in the promotion of his employer's business.

**Commission v Gintert, 128 Oh St 129,** holds in substance that injuries sustained by teacher in public school while traveling from her home to the school building are not compensable notwithstanding such teacher did some work in her own home preparatory to or in connection with her duties in the school room.

Matthias, J., delivering the opinion of the Court, quotes from cases we have already cited, and says in substance in that case, the claim is based upon the theory that while at her home she did some work in preparation for her school duties and that therefore she was in the course of her employment not only while in the school building, but also while traveling from the school to her home and while at her home and also while en route back to the school. The Judge states:

"It would follow from an application of that theory that the workmen's compensation fund would become a general insurance fund covering accidental injury or death of such employe, whatever the cause, and wherever and whenever it may have occurred."

"If there can be a recovery under the facts in this record, then there could be a like recovery in the case of any clerk, stenographer, bookkeeper, or of any other employe employed in an office, bank, store, factory, or other place of employment, who carried home any books, papers, statements, etc., for any purpose at all connected with his duties, and sustained an injury while absent from the place of employment and while engaged in some act not in any wise connected with the duties of the employment. That would disregard entirely the test of the right to such award, which is whether the employment had some causal connection with the injury, and would subject the fund to charges for compensation for an injury which had its cause entirely outside of and wholly disconnected from the business in which the injured workman was employed, contrary to the underlying principles," etc.

The Court has had difficulty in differentiating the facts in the present case from the principle laid down in the above cited cases, especially the last. See also **Ashbrook v Commission, 136 Oh St 115.**

Cases to the contrary are cited, **Industrial Commission of Ohio v Wilson, 34 Oh Ap 36,** holds that a sales manger while cranking his automobile at his home in the morning was within the scope of his employment where his office hours were not limited and duties included work before and after office hours.

**Fisher v Commission, 55 Oh Ap 524,** holds that where an employer as a part of the contract of employment furnished an employee with automobile and such employee is injured while driving the automobile from his office to the garage, such injury is received while in the course of employment.

**Bower v Industrial Commission, 61 Oh Ap 469.**

The defense is asserted that Creager was an independent contractor and reference is made to **Ohio Jurisprudence, 21, §§1, 3, et seq.**

See **Industrial Commission v Laird, 126 Oh St 617.**

We have no difficulty in arriving at the conclusion that the decedent was not an independent con ██ tractor so far as his employment by Meyer Brothers was concerned. He had a fixed compensation for a fixed service. Our difficulty is to determine whether or not his injury arose from his employment or from the ordinary risks that all are subject to in driving an automobile upon the streets and across railroad tracks.

We can readily see that if Creager had been employed to use his automobile in his employer's business through certain territory, as a salesman, that he would be entitled to compensation, or we might agree that if was actually performing any service for his employer out of which the accident arose, that he would be entitled to compensation.

The opinion up to this point has been prepared by Judge Geiger, all of which is concurred in and adopted by the writer of the remaining portion of the opinion.

This plan is adopted due to the fact that the majority members of the court are unable to agree with Judge Geiger's conclusion that the accident did not arise during the course of decedent's employment, and, therefore. the judgment should be. reversed.

It is the view of the majority that this is a factual question and there being supporting evidence, we should not molest the verdict of the jury for the plaintiff and against the defendant and upon which verdict the trial court entered judgment. We now make specific reference to the supporting testimony.

The claimant, Marie S. Creager, widow of the decedent, was called as a witness and in substance gave the following testimony, which is pertinent to the present questions:

She testifies that following the accident and resultant death of her husband, Mr. Creager, one of the Meyers Brothers, came to her home when she turned over to him the money and papers found on Mr. Creager. During this interview she states that Mr. Meyer made the following statement:

"Yes, he said, that the money was his because Dewey was bringing it back to help apply on the pay roll; had it with him that afternoon.'

Also the receipt, which was identified and introduced in evidence as Exhibit G, reads as follows:

"Received of Mrs. D. U. Creager Five Dollars ($5.00) which was found in Dewey's pocket book and which he was returning to help with the pay roll."

It is true that Mr. Meyer denied the above testimony of Mrs. Creager, although he did admit the signing of the receipt. Meyer had also testified, when on the stand in the first instance, that Mr. Creager had brought the pay roll money out in the morning, and hence was not bringing it out at the time of his accident. He further presented evidence that Creager's contemplated visit to their place in the afternoon was not in connection with any activity of their business. The testimony of Mrs. Creager was objected to and the exceptions to her testimony are set out as one of the grounds of error. This ██ testimony, as was the receipt, was in the nature of a statement against interest and under that rule of evidence was properly admissible.

If believed by the jury, they had a right to determine from that evidence that Mr. Creager, at the time of his accident, was within the scope of his employment, and that the accident and resultant death grew out of his employment.

This factual difference brings the case clearly within the exceptions provided in the "Going and Coming Rule" frequently mentioned in industrial cases. If Mr. Creager, immediately before and at the time of the accident, was taking out money to provide the payroll this would be a service within the course of his employment.

We call attention to the following cases wherein are announced the controlling exceptions to the "Coming and Going" principle:

Voehl v Indemnity Insurance Co., 288 U. S., 162, Syl. 2;

State Compensation Fund v Industrial Accident Commission, 264 Pacific, 514;

Gibbs v Macey, 212 N. Y., 428;

Schockley v School District, 204 N. W., 715;

Hyle v Green High School, 226 N. W. 71.

The judgment will be affirmed.

HORNBECK, PJ., BARNES, J., concur. GEIGER, J., dissents.

By GEIGER, J., Dissenting.

I must dissent. In drafting the original opinion, which was not agreed to as a majority opinion, but a large part of which is adopted and approved I stated in conclusion:

"The most that can be said under any view of the evidence is that on Saturday afternoon, after his usual hours of work for the Meyer Brothers were completed, and in order to be present at a conference which might have relation to his future employment, Creager drove to the place of business and during his progress was killed, as any other traveler on the highway may have been. His accident did not arise during the course of his employment."

I must adhere to this conclusion under the authority of the cases cited by me as appear in the body of the opinion.

Especially am I unable to avoid the authority of **Commission v Gintert, 128 Oh St 129, at page 133,** which is quoted at large in the opinion.

The statement of the court fits the case at bar like a glove.

It must not be overlooked that the Gintert case overruled **Inglish v Commission, 125 Oh St 494,** where the facts seem to me to be much more favorable to the workman, than the facts at bar.

In overruling the Inglish case, and in reversing both lower Courts in the Gintert case, Matthias, J., on page 134, says in substance:

"We are fully persuaded, however, that the essential and basic principles of the Workmen's Compensation as heretofore discussed, preclude compensation upon the undisputed facts in either case."

If the basic principle of the law preclude compensation in either of these two cases, by what logic can it be held that the same basic principles allow compensation in the case at bar?

Paraphrasing the statement of Matthias, J., on page 133, the death of Creager was not caused by any equipment, tools or material in any wise connected with his employment, and the employment had no causal connection with the injury—either through its activities, its conditions, or its environments.

In the Gintert case, the teacher was killed by a collision with an interurban car, as in this case. She had in her possession papers incident to her employment which she was carrying from her home to her place of employment. It was customery for her to carry her papers back and forth, in order that she might properly perform the duties of her employment. The same was done in the case at bar, except that the evidence is much weaker on the point that the accident herein occurred while the decedent was going to the place of employment, and was, as an incident of that employment, carrying on his person $5.00 for pay roll. The evidence is much stronger in support of the claim that all duties as to the pay roll had been fully discharged in the morning.

In the case of **Frame v Industrial Commission, 30 Abs 362,** this court had under consideration the right of a state employee to compensation out of the fund.

The opinion was by Barnes, J. While the case was decided under the "going to or from work" rule, the judge delivering the opinion made an examination

of the decisions of the several Courts touching the right of the employee to recover under the facts controling each case. He quoted at large from Commission v Gintert, supra, and discussed that case and the Inglish case which was overruled, as well as many other cases; among them **Bonnett v Commission, 22 Abs 176,** decided by this Court. We will not discuss further the Frame case or Judge Barnes' opinion, but cite it as authority for the denial of compensation in the instant case.

The majority takes the position that the instant case involves factual questions, and there being supporting evidence, that the verdict should not be molested. The majority then comments upon the evidence.

I am of the opinion that the verdict in this case is manifestly against the weight of the evidence. Very rarely does a jury find against the claimant in actions against the Commission, and I am of the opinion that we should not hold these verdicts in too great reverence. We should exercise our own judgment, always, of course, having due, but not excessive, regard for the verdict.

In the Frame case, above alluded to, this Court reversed the judgment of the trial Court based upon the verdict.

The Gintert case reversed the action of the trial court. The Inglish case when overruled, implied a reversal of the judgment of the trial Court.

It must not be overlooked that the instant case is an action by the State to recover from Meyer Brothers, more than $4,000.00, which has been or will be paid to the widow of Creager—irrespective of the final judgment in this case. The action is brought against Meyer Brothers by reason of it being a non-conforming employer of three or more employees, under §1465-74 GC.

Meyer Brothers cancelled their state coverage upon the representation of Creager that it was not needed because, he not being an employee, the partnership did not employe three or more, and consequently was not liable. While it is true that the cancellation by Meyer Brothers of the State coverage, on

the suggesttion of Creager, does not determine the facts or the law, yet where, as in this case, the widow has been or is to be compensated, we should scrutinize with great care the facts upon which the jury rendered its verdict, upon which the judgment in favor of the State was based.

It may be noted that the majority has cited, in support of its position, a number of out-of-State cases. I am not concerned with such cases, where the Ohio decisions clearly point the way.